JOHN A. LAWLER, ADMINISTRATOR, *vs.* THE HARTFORD STREET RAILWAY COMPANY.

First Judicial District, Hartford, May Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

This court will not review the decision of the trial court as to the weight of the evidence bearing upon the question of negligence in fact.

If the trial court, in reaching its decision in an action of negligence, violates no principle of law, either in defining the legal duties of the parties or in the process of deducing an ultimate fact from the subordinate, specific facts found, and the only question involved is whether the conduct of the litigants was that of a person of ordinary prudence under all the circumstances of the case, this court will not undertake to decide whether the described conduct does or does not, in its opinion, support an inference of negligence or legal liability. In such cases the measure or standard of duty and the extent of its performance are so interwoven as to constitute but a single, indivisible question of fact, the determination of which by the trial court is final and conclusive.

The failure to stop, look and listen, before crossing a street railway track, is not, of itself and as matter of law, negligence.

In the absence of any statute or ordinance regulating the speed of street railway cars, they must be run at such a rate and kept in such control as not to interfere unreasonably with the rights of others upon the highway; and the question whether this duty has been performed or not in a given case is one of fact for the determination of the trial court.

By suffering a default in an action for negligence, the defendant, under our practice, voluntarily assumes the burden of establishing, by a preponderance of evidence, facts which show either that he was not guilty of the negligence alleged, or that the plaintiff was guilty of contributory negligence; and failing to discharge this burden judgment against him must follow for the actual damage proved.

Argued May 3d—decided June 8th, 1899.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate, brought to the Superior Court in Hartford County and heard in damages to the court, *Thayer, J.*, after the defendant's default; facts found and judgment rendered for the plaintiff for $800, and appeal by the defendant for alleged errors in the rulings and findings of the court. *No error.*

The court found the following facts: The defendant, on December 29th, 1897, operated a line of trolley cars upon a public highway called New Park avenue in the city of Hartford, the length of said line being 5,000 feet or about a mile. About noon on said day the collision described in the fourth paragraph of the complaint occurred between one of the defendant's cars upon said line, operated by its employés, and the wagon in which said John Lawler was riding. The place of the collision was about one third of a mile north of the city line and from the southerly end of the defendant's car track. Just before the accident the car was proceeding northward along said track, which was in the middle of the street, and Lawler was driving northward on the east side of and about six feet from the track in his wagon. He was jogging along at the rate of four or five miles an hour, and when the car was at least 70 feet from him, in his rear, he turned in upon said track, and without slacking his speed attempted to cross the track at an angle of forty-five degrees. When the rear wheel of his wagon was upon the west rail of the track the fender of the car struck said wheel, pushed the wagon along the street a short distance, and overturned it and threw said Lawler into the air and to the ground, inflicting injuries from which he died. The point at which the collision occurred is near the bottom of a hill, the grade of which, varying somewhat at different parts of the hill, rises on the average 2.7 per cent for 700 or 800 feet south of the place of accident, and at a less per cent from that point to the southern terminus of said track, the total fall in grade from said terminus to the place of accident, 1,700 feet, being twenty-six feet. Schedule time for the car in making the run from said terminus to the north terminus of the line was eight minutes; and proper operation of the car in making such run required that in going down this grade the speed should be less than in running on an up grade at the north end of the line, because little or no power was used on the down grade and the car was controlled by the brake, while on the up grade power was used to propel the car. So operated, the car can be stopped in twice its length, seventy feet. On the trip now in question the car

was started on time, proceeded at half power to a point about 800 feet south of the place of accident, and at that point power was entirely shut off and the car "coasted" down the hill by gravity, and no power was applied thereafter before the accident, except the reverse power to be mentioned hereafter. The motorman sounded the gong as he began to coast, and sounded it several times before Lawler turned across the track. When he saw Lawler turn upon the track he sounded the gong violently, let go the brake and reversed the power so as to stop the car as soon as possible, at the same time calling loudly to Lawler, and doing all in his power—unless he should have sanded the tracks by a means provided for such purpose—to stop the car. The car after striking the wagon ran at least 130 feet before it was stopped. The morning of this day had been extremely cold and the air was frosty. There was a light covering of snow upon the ground. The tracks, as the conductor and motorman of the car testified, were slippery in places. The car, after its trip south, had waited at the southern terminus only four minutes before starting on the trip on which the accident occurred. The rate of speed at which the car was moving just before the collision cannot, from the conflicting evidence, be accurately determined. It was more than eight miles an hour, the highest rate fixed by the defendant's witnesses, and less than twenty miles an hour, the highest fixed by the plaintiff's. I am satisfied, and find, that it was at least ten miles an hour. It was probably twelve. Between the point of collision and the southern terminus of the track the street is sparsely built upon, there being but fifteen houses upon the street for this distance, and in this distance no other street crosses New Park avenue. There is, however, considerable driving and travel upon the street, that portion of it lying west of the car tracks being newly macadamized and the portion east of the tracks being well turnpiked and in excellent repair. The avenue and car tracks end near the entrance to Charter Oak Park. The street is forty feet wide.

Lawler was a man over sixty years old and was slightly deaf. He lived in the southerly part of the city of Hartford

on New Britain avenue, and was familiar with that part of the city and with New Park avenue. Just before the accident he had come past the car standing at the terminus, and knew that it must soon be coming back upon its return trip. He did not stop before turning across the track. Whether he looked back or listened before attempting to cross, did not appear. No witness was produced who saw him do so. Those on the car who saw him ahead, the conductor, motorman, and one passenger, did not observe him do so; but their attention was not particularly fixed upon him until he had turned upon the track and they saw his danger. So far as they observed there was nothing to indicate that he intended to cross the track until he actually turned toward it. When he turned upon the track he had time, at the speed at which he was driving, to cross safely ahead of the car had it been going at its ordinary, proper rate of speed. As the car approached and the collision became imminent he lashed his horse and did everything possible for one in his circumstances to avoid the accident. There was no obstruction in the street and no reason for his crossing the track was shown.

The defendant claimed and asked the court to hold and rule (a) that the defendant was guilty of no negligence; (b) that the accident was due wholly to the negligence of the plaintiff's intestate; (c) that if the defendant was guilty of negligence, Mr. Lawler was guilty of contributory negligence; (d) that as it was in uncontradicted evidence and admitted by the plaintiff that the motorman did all in his power to stop the car as soon as Mr. Lawler indicated his intention to cross, there could be no imputation of supervening negligence; (e) that the attempt of the plaintiff's intestate to cross the track without either stopping, looking, or listening, and without using his senses in any way to discover the approach of the car, was negligence and was contributory to the result; (f) that the conduct of the plaintiff's intestate prior to the collision constituted contributory negligence; (g) that as the plaintiff's intestate endured no pain or suffering after the accident, and no other damage than that claimed to be due for the death itself had been

proved, the plaintiff could recover only nominal damages; (*h*) that upon the facts of the case the plaintiff should have been awarded only nominal damages.

The court did not find from the evidence that the defendant was not guilty of negligence, or that the plaintiff's intestate was guilty of negligence, but ruled and held that the facts found did not show that the defendant was not guilty of the negligence charged in the complaint, or that the plaintiff's intestate was guilty of negligence contributing to his injury. The court also found that there was mental and physical suffering for an appreciable length of time by said intestate after his wagon was struck. The defendant's claims were overruled, and a judgment for substantial damages was rendered in favor of the plaintiff as on file.

The following are the reasons of appeal: The court erred (1) in holding that the facts did not show that the defendant was not guilty of the negligence charged in the complaint; (2) in refusing to find from the facts and evidence that the defendant was not guilty of negligence; (3) in not holding that the accident was due wholly to the negligence of the plaintiff's intestate; (4) in refusing to hold, upon the facts of the case, that if the defendant were guilty of negligence plaintiff's intestate was guilty of contributory negligence; (5) in refusing to hold that the attempt of the plaintiff's intestate to cross the track, without either stopping, looking, or listening, and without using his senses in any way to discover the approach of the car, was negligence and was contributory to the result; (6) in refusing to hold that the conduct of plaintiff's intestate prior to the collision constituted contributory negligence; (7) in its refusal to adjudge that upon the facts of the case the plaintiff should have been awarded only nominal damages.

*Henry C. Robinson* and *John T. Robinson,* for the appellant (defendant.)

*Charles E. Perkins* and *Arthur Perkins,* for the appellee (plaintiff).

HALL, J. The defendant suffered a default, and the plaintiff, on the hearing in damages, proved that by force of the collision described in the complaint his intestate was thrown from his wagon and sustained injuries from which he died on the following day. The plaintiff then rested his case and the defendant, under a notice filed in pursuance of Chap. 220 of the Acts of 1897, offered evidence to prove that the accident was not caused by its negligence, and that the negligence of the deceased, Lawler, contributed to cause his injury. The plaintiff then offered evidence to rebut that of the defendant. From all the evidence so offered the court has found the facts set forth in the finding and, without having found as a fact from such evidence, or as a conclusion of fact or law from the facts found, either that the defendant was negligent or that it was not negligent, or that Lawler was not negligent or that he was negligent, has rendered judgment for the plaintiff for substantial damages. Nowhere in the record is it stated that the court held that the defendant was negligent, or that the deceased exercised due care. The conclusion and ruling of the court, in the language of the finding, was that it " did not find from the evidence that the defendant was not guilty of negligence, or that the plaintiff's intestate was guilty of negligence, but ruled and held that the facts found did not show that the defendant was not guilty of the negligence charged in the complaint, or that the plaintiff's intestate was guilty of negligence contributing to his injury."

In this conclusion, in connection with the final judgment rendered, three rulings by the trial court are involved: First, that the defendant failed to establish, as a fact, by preponderance of evidence, either its claim that it was free from negligence, or that the deceased was negligent; second, that the facts which were proved did not of themselves constitute in law either due care upon the part of the defendant or negligence upon the part of the plaintiff; and third, that when in such a hearing the evidence presented by both the defendant and the plaintiff fails to show, either that the defendant was without negligence or that the plaintiff was negligent,

the plaintiff may recover substantial damages; in other words, that the burden of establishing the proposition that it exercised due care, or that the plaintiff failed to exercise due care, rests upon the defendant, and that when it appears from the evidence presented by both sides that the defendant has failed to sustain that burden, judgment will follow for the plaintiff for the amount of damages proved.

We cannot review the decision of the trial court as to the weight of the evidence bearing upon the questions of negligence, as questions of fact. To the extent that the claims of the defendant upon the subject of negligence presented only questions of fact, the decision of that court that the evidence in support of its claims did not preponderate over that against them, is final.

Inasmuch as the court has neither held, as a conclusion of law from the facts found, that the conduct of either party was negligent, nor that it was free from negligence, our inquiry is not, did the court err in deducing from the facts found an inference which was wrong, but did it err in failing to draw from such facts an inference of law favorable to the claims of the defendant, or in failing to hold that the facts in themselves constituted contributory negligence by one party and due care by the other, as the defendant claimed?

If the facts found show of themselves that Lawler failed to perform some duty imposed by law, or that the defendant did not fail, as alleged, to perform some duty imposed by law, the decision of the trial court was erroneous. But if it appears from the record that the court, in reaching its conclusion of legal liability, did not violate any principle of law, either in defining a legal duty or in the process of deducing an ultimate fact from the subordinate facts found, and that the only duty involved in the case is that of ordinary prudence in the conduct of the parties under all the circumstances as testified to at the trial, this court will not undertake to decide whether the conduct of the parties as described in the finding does, or does not, in its opinion, support an inference of negligence, *i. e.* legal liability. In such cases the inference of the trial court is a conclusion upon the questions of the measure of

duty, and the extent of performance, which are from the nature of the case so interdependent as to constitute, for purposes of review, a single, indivisible question of fact, and the conclusion is therefore final.

If the subordinate facts stated in the finding as descriptive of the conduct of the parties, are such as to be necessarily and wholly inconsistent with the inference drawn, the record then includes another question, *i. e.* the plain violation of legal principles in reaching the conclusion.

The grounds of this rule were fully discussed in *Farrell* v. *Waterbury H. R. Co.*, 60 Conn. 239, 246–257, and again as affected by recent changes in procedure, in *Nolan* v. *New York, N. H. & H. R. Co.*, 70 Conn. 159, 185, 193. The rule is firmly established, and has frequently been expressed by this court in various forms. While the nature of the rule is such that it cannot be both fully and accurately stated in a brief form, it may be put thus : When the question of legal liability is purely that of prudent conduct under the circumstances of a particular case, and no violation of law by the trial court is apparent from the record, its conclusion as to negligence or legal liability, including the measure of duty as well as the extent of performance, is final.

In the case at bar the facts relevant to the questions of negligence which were proved in the court below are recited in the finding. The act which the defendant claims constituted contributory negligence was the attempt of Lawler to cross the track under the circumstances detailed in the finding. The defendant claims that the failure of Lawler to look for an approaching car behind him was in itself negligence. But it is not found that he failed to look. The defendant, under the ruling of the court as to the burden of proof, failed to establish that fact. The finding is : " Whether he looked back or listened before attempting to cross did not appear." If it is the defendant's claim that there is an unbending rule of law which requires one to stop, look and listen before crossing a street railway track upon a highway, we cannot sanction it. But it is unnecessary to discuss that question here. If it was not of itself negligence for Lawler to attempt to

cross the defendant's tracks after having seen the approach-
ing car, then the facts in this case do not show contributory
negligence as a matter of law.

We think the facts found do not show that it was neces-
sarily unreasonable conduct for him to attempt to cross after
having seen the car. Upon the facts proved it may or may
not have been. The finding does not state how near to him
the car was when he turned in upon the track. The court
has found that it was " at least seventy feet from him," and
further, that " he had time at the speed at which he was driv-
ing to cross safely ahead of the car had it been going at its
ordinary, proper rate of speed." It is consistent with the
facts proved that Lawler saw the approaching car and, with-
out negligence on his part, failed to observe from his posi-
tion the unusual speed at which it was running, so that his
conclusion that he could safely cross was not an unreasonable
one. Clearly it is not negligence in law for one to cross a
street railway track in front of an approaching car which he
has seen and which does not appear to him to be dangerously
near, and which would not have been so in fact had it been
running at its ordinary rate of speed. Whether one who has
observed an approaching street car should have also appre-
hended that it was approaching at such a speed as to reach
him before he could cross the track, is generally a question
of fact to be determined upon the circumstances of each par-
ticular case. *Consolidated Traction Co.* v. *Glynn,* 59 N. J.
L. 432; *Downey* v. *Pittsburgh, A. & M. Traction Co.,* 161 Pa.
St. 131; *Callahan* v. *Philadelphia Traction Co.,* 184 id. 425;
*Patterson* v. *Townsend,* 91 Iowa, 725. The plaintiff's intes-
tate " was not bound, at his peril, ' to know,' before attempting
to cross, that a collision would not occur. He was only re-
quired to make such observation and acquire such informa-
tion as would have convinced a reasonably prudent man, in
a like situation, that the passage could be made in safety."
*Saunders* v. *City & Suburban R. Co.,* 99 Tenn. 130, 135.
We cannot say upon these facts that as a matter of law
Lawler was negligent, nor that the trial court, in holding that
it had not been shown that the plaintiff's intestate was guilty

of contributory negligence, applied to his conduct any other test than that of reasonable prudence, or that any different rule should have been applied. The conclusion of the trial court, that when measured by that test the conduct of Lawler had not been shown to have been negligent, is final.

Street railway companies in operating their cars along public streets have a common right in the highway with other travelers. In the absence of any law or municipal ordinance regulating the speed of their cars, they must be run at such speed and must be kept in such control as not to interfere unreasonably with the rights of others upon the highway. In using the highway they must exercise reasonable care to avoid inflicting injury upon others. *Laufer* v. *Bridgeport Traction Co.*, 68 Conn. 475, 489. A street railway company has "no right to propel its cars at such a rate of speed as is incompatible with the safe and customary use of the street by others who have equal rights with the company upon it." It must run its cars "with such care and at such a rate of speed that other persons, either on foot or in vehicles, may use the street in safety, provided they exercise reasonable care for their own protection." *Consolidated Traction Co.* v. *Glynn, supra.*

We are asked to hold that the trial court erred in ruling that the defendant failed to prove that it was in the exercise of such care. Not that it erred in deciding that the defendant had failed to prove it as a fact, for such a ruling could not be reviewed here, but in ruling that the facts found to have been proved did not as a matter of law constitute due care upon the part of the defendant.

The rate of speed at which the car was moving just before the accident is not definitely fixed by the finding. It is given as not less than ten nor more than twenty miles an hour, and as probably twelve. The last words are qualified by the statement preceding them. This would seem to have been unnecessary had the court been satisfied that the rate of speed was twelve miles an hour. Its speed was greater than its "ordinary, proper rate of speed." Though, as ordinarily operated, it could be stopped in seventy feet, the motorman did

not succeed in stopping it within a distance of two hundred feet. When he saw Lawler turn upon the tracks the motorman did all in his power to stop the car except to sand the track. The car was coasting down hill and the tracks were slippery in places.

Has the defendant, by force of the facts found, proved that it was not guilty of negligence? If the exercise of reasonable caution and prudence required that the car should have been run at a slower rate, or should have been held in better control as it ran down this hill, or that its motorman should have sanded the tracks by the means provided for that purpose, it cannot be claimed that it was free from negligence.

This court cannot say that as a matter of law the defendant was not negligent in running its car down this descent at the rate of speed shown, or in not having more complete control of the car, or in omitting to sand the track. We cannot lay down definite rules for the management of electric cars. The trial court, the only proper tribunal for the determination of these questions, has decided that the defendant has failed to prove that its conduct, as tested by the standard of reasonable prudence, was free from negligence, and that decision we cannot review.

By suffering a default the defendant, under our practice, voluntarily assumes the burden of proving, either that the accident was not caused as alleged in the complaint, by his omission to perform some legal duty, or that the plaintiff's failure to perform some legal duty essentially contributed to cause it. If the facts which are established upon a hearing in damages after a default falls short of such proof, the defendant has failed to sustain his burden, and judgment follows for the actual damages proved.

Whether the question of negligence depends entirely upon the proof of particular facts, or upon the proof of facts showing that the conduct of the parties was or was not that of persons of ordinary prudence, or of facts constituting in themselves negligence or want of negligence,—upon such a hearing in damages the burden rests upon the defendant to establish by a preponderance of evidence facts which show, either that the

defendant was not guilty of the negligence alleged in the complaint, or that the negligence of the injured person contributed to cause the accident. "The burden is on the plaintiff to show the extent of the damage. When he has done that he may rest. . . . In respect to negligence the defendant assumes the burden of proof." And this must be proved by a preponderance of evidence like any other fact to be established in a civil suit. *Nolan* v. *New York, N. H. & H. R. Co.*, 53 Conn. 461, 477. In *Crogan* v. *Schiele*, 53 Conn. 186, although some of the court questioned the correctness of JUDGE STODDARD's statement of the effect of a demurrer as an admission in a hearing in damages, the court was unanimous that the burden of proof upon the question of negligence rested upon the defendant. In the dissenting opinion of JUDGE PARK (p. 208), in which, upon this point, JUDGES CARPENTER and LOOMIS concurred, it is said: " It is now the settled doctrine of this State, that it is competent for the defendant to controvert the facts as to negligence. . . . In this respect the burden is on the defendant. . . . If he offers no evidence judgment goes against him for all the damages proved. But if he offers evidence upon the subject of negligence, the question must be determined wholly by the evidence. As the defendant takes the burden he must establish his claims by a preponderance of proof." Among the later cases in which this rule is observed, are *Martin* v. *New York & N. E. R. Co.*, 62 Conn. 331; *Sprague* v. *New York & N. E. R. Co.*, 68 id. 345; *LaBarre* v. *Waterbury*, 69 id. 554, 556; *Bergin* v. *So. New Eng. Tel. Co.*, 70 id. 54, 65; *Julian* v. *Stony Creek Red Granite Co.*, 71 id. 632.

The defendant failed to prove facts sufficient to sustain its claims; the case therefore stood as if the plaintiff had proved the amount of his damage and had rested, and the defendant had offered no evidence. The court properly rendered judgment for substantial damages.

There is no error.

In this opinion the other judges concurred.