ROSE A. RYAN, ADMINISTRATRIX, vs. THE TOWN OF
BRISTOL.

Hartford Dist., Jan. T., 1893. ANDREWS, C. J., CARPENTER, TOR-
RANCE and FENN, Js.

The plaintiff's intestate, in crossing a bridge on foot about midnight, fell
over a defective railing into the river, where his body was found the
next morning. There were no eye-witnesses of the accident. Held, in
an action against the town, that the plaintiff was bound to show that
the deceased was in the exercise of ordinary care.

But that this need not be shown by direct evidence, but might be inferred
by the jury from the circumstances.

The jury having rendered a verdict for the plaintiff, the town, on an appeal
to this court, claimed that there was no evidence whatever upon the
point of the decedent's care or negligence, and that in the absence of
all evidence the jury should have been instructed that they could not
find that the decedent had used ordinary care. The case was appealed
on the ground of error in the charge of the court that the jury might
draw the inference of care or negligence from all the facts and circum-
stances. Held that, as the appeal did not bring up the whole evidence,
the court could not know from the record that there were not circum-
stances shown that warranted the jury in their finding.

The opinions of non-expert witnesses are admissible under our practice as
to the defective and dangerous condition of a highway or bridge, and
they are not limited to a mere statement of the facts upon which their
opinions are formed.

[Argued November 2d, 1892—decided March 6th, 1893.]

ACTION to recover for the death of the plaintiff's intestate
through a defect of a bridge of the defendant town ; brought
to the Superior Court in Hartford County, and tried to the
jury, on a general denial, before *F. B. Hall, J.* Verdict for
the plaintiff for $5,000 damages and appeal by the defendant
for error in the rulings and charge of the court. The case
is fully stated in the opinion.

*C. E. Perkins* and *J. J. Jennings,* for the appellant.

Late on the night in question the decedent, William Ryan,
who it was testified had been drinking, started towards the
bridge in question. That is one point in the history. The

next morning he is found dead in the river. That is the next point in the history. Between these points there is a gap. No one knows what took place nor how Ryan was killed. This is a sufficient statement of the facts upon which the plaintiff claims to recover, notwithstanding the stringent rule of law requiring her to prove the allegations of the complaint affirmatively by a preponderance of evidence, to wit : (1) That the highway was defective ; (2) That Ryan was killed by reason of this defect ; (3) That he was in the exercise of due care at the time. The defendant claims not only that the law is not so that the plaintiff can recover on such evidence upon such facts, but that such a practice would be pernicious in the extreme, placing corporations and individuals alike at the mercy of accident and malice, permitting guesses to usurp the province of proof, introducing inextricable confusion into the administration of law, and placing a premium upon drunkenness and suicide. A reference to the finding and the charge will show that this statement is not exaggerated. It is found that it was admitted that " no person saw Ryan fall or saw him on the bridge on the night in question." And the judge says in his charge : " We have before us no direct evidence of how Ryan came to his death. He was dead, it was conceded, when he was found in the morning. He was last seen about twelve o'clock, and we have in court no eye-witness of the manner in which his death was caused ; and indeed, I think the evidence tends to show that there was no eye-witness to his fall, *if it was a fall.*" Under such a state of facts the defendant strenuously claims that the law was correctly stated in its requests to charge. The following facts should be kept in mind in the examination of the question : No one knows and there is no means of knowing *when* Ryan died. No one knows and there is no means of knowing *how* he died. No one knows and there is no means of knowing *why* he died. No one knows and there is no means of knowing whether he used reasonable care to avoid danger. We start into the investigation of this case with all these points granted. The court says they are admitted. And yet, without knowing

and without the means of knowing any of these things, the court tells the jury they may find that the negligence of the town was the cause of Ryan's death, and that he was in the exercise of due care at the time he met his death. In this we contend that the court clearly erred, and we are amply sustained by the authorities. *Gahagan* v. *Boston & Lowell R. R. Co.*, 1 Allen, 189 ; *Smith* v. *First Nat. Bank*, 99 Mass., 612 ; *Murphy* v. *Deane*, 101 id., 455 ; *Mayo* v. *Boston & Maine R. R. Co.*, 104 id., 140 ; *Crafts* v. *City of Boston*, 109 id., 521 ; *Hinckley* v. *Cape Cod R. R. Co.*, 120 id., 257 ; *Mosher* v. *Inhab. of Smithfield*, 84 Maine, 334 ; *Wendell* v. *N. York Central R. R. Co.*, 91 N. York, 420 ; *Bond* v. *Smith*, 113 id., 378 ; *Borden* v. *Del., Lackawanna & Western R. R. Co.*, 131 id., 671 ; *Hooper* v. *Johnstown etc., Horse R. R. Co.*, 59 Hun, 121 ; *Ford* v. *Anderson*, 139 Penn. St., 261 ; *Balt. & Ohio R. R. Co.* v. *The State*, 71 Md., 590 ; *Fox* v. *Town of Glastonbury*, 29 Conn., 204, 209 ; *Nolan* v. *N. York, N. Haven & Hartford R. R. Co.*, id., 476 ; *Farrell* v. *Waterbury Horse R. R. Co.*, 60 id., 239 ; Shearman & Redfield on Negligence, 59.

*A. F. Eggleston*, for the appellee.

TORRANCE, J. This is an action to recover damages for the death of William Ryan, caused by a defective highway. The defect claimed to exist was an insufficient railing on the side of the highway forming the approach to a bridge over the Pequabuck river, and a hole in the walk or foot path near the defective railing. The jury rendered a verdict for the plaintiff, and the defendant brings this appeal for certain claimed errors in the admission of testimony and in the charge of the court.

In some of its aspects the case is a peculiar one. Ryan was last seen alive about midnight of August 30th, 1890. He was then on the south side of the river on the highway in question, walking towards the bridge, and in the direction of his home. The next morning his dead body was found down the embankment on the north side of the river, not far

Ryan v. Town of Bristol.

from the abutment of the bridge and near the point where it was claimed the highway was defective.

There was no direct evidence showing the acts or conduct of Ryan after midnight, nor the certain hour, cause or manner of his death. All these things were largely matters of inference from circumstantial evidence, no eye-witness testifying to any of them. The contest in the court below, so far as we are here concerned with it, was mainly upon two questions, namely, whether Ryan's death was caused at all by the defective highway, and, if so, whether he was in the exercise of due care at the time.

According to the law of this state, and under the pleadings, it was clearly incumbent upon the plaintiff to prove both of these essential facts by a fair preponderance of evidence. To prove both she relied chiefly if not entirely upon circumstantial evidence. The record shows in a general way the nature and character of that evidence, but all the facts and circumstances comprised in it are not of course before us. From the allusions made to it in the charge of the court, in stating the claims of the parties upon the evidence, we can see that much of it related to the facts and circumstances seen and observed when the body was found next morning. It related to the appearance of the broken railing and its condition ; to the size and location of the hole in the walk near by ; to the appearance of the bank and the bushes and branches thereon as disturbed, displaced or broken by Ryan's fall; to the proximity of the body to the railing and abutment; to the posture and position of the body and the marks and bruises thereon ; and to other matters of a similar nature.

It was under this state of things that the defendant made the requests to charge set forth in its reasons of appeal. These reasons contain ten assignments of error. The first relates to the admission of evidence and will be considered later on. The last one has no foundation in the record and was abandoned upon the argument. Of the remaining eight, two of them, the eighth and ninth, relate to certain parts of

the charge as given, and six of them to the refusal of the
court to comply with certain requests to charge.

In discussing the questions pertaining to the charge and
the refusals to charge, it must be borne in mind that the en-
tire evidence in the case is not before us, and also that the
question of the sufficiency of the whole or any part of that
evidence is not before us. The case is not here as upon a
motion for a new trial for a verdict against evidence, nor upon
proceedings to set aside a nonsuit, where all the evidence
in the case would appear of record and the question of its
sufficiency or its relevancy would be involved. Aside from
the question of evidence the errors assigned, as heretofore
indicated, relate entirely to the instructions which the court
gave or refused to give to the jury. Bearing these things
in mind we will first consider the refusals to charge as re-
quested.

The first of these is the alleged refusal of the court to
charge as follows :—" In deciding upon the question of con-
tributory negligence the jury should consider the character
of the highway at that place as to breadth of side-walk, di-
rection, straight or not, and the kind of night, whether light
or dark, and all the other circumstances." We assume that
evidence of all the matters mentioned in the request was
before the jury, although the record perhaps does not clearly
show this. The court did not charge this request in terms.

The defendant in its brief claims that in refusing to charge
this request in terms the court took away from the consider-
ation of the jury the very facts and circumstances which bear
upon the question of due care. If the record disclosed that
the court had done this, either in form or in substance and
effect, we think it would entitle the defendant to a new trial.
But this nowhere appears. The evidence upon these mat-
ters was before the jury, and was not withdrawn from their
consideration upon any point involved in the trial. In its
charge on the question of contributory negligence the court
refers to some of the facts and circumstances, and in other
parts of the charge had referred to others, but it nowhere

professes to refer to all. All, however, including those embodied in this request, were before the jury.

The jury were correctly told what the exercise of due care meant as applied to one in Ryan's situation that night; that it meant such care as a person of ordinary prudence would have exercised under the same circumstances; and that it was Ryan's duty to use every care and precaution to avoid falling from the bridge that a sober man of ordinary prudence would have used under the circumstances. What circumstances? Why all the circumstances surrounding Ryan as he approached the defective portion of the highway, including those specifically embodied in the request and all the others.

The jury were also told that whether Ryan exercised such care was a question of fact to be determined by them from the evidence; that in the absence of evidence they were not at liberty to guess or surmise that he used such care; and that while the existence of due care might be inferred from the facts and circumstances in evidence, these last must be such and so shown as fairly and reasonably to support and warrant the conclusion that Ryan exercised such care.

It is plain, we think, from this charge that the "evidence" and the "facts and circumstances" to which the court thus alludes and to which it refers the jury, include the very evidence which the defendant claims the court withdrew from their consideration. It seems clear to us that the court in substance and effect complied with this request, and that the refusal to charge in the terms of the request did the defendant no harm.

The next error, stated in the third reason of appeal, is without foundation on the record. Upon this point the court clearly and explicitly charged in substance and effect and almost in terms as requested. This is true also of the error assigned in the sixth reason of appeal and we need not otherwise notice it. The errors assigned in the fourth, fifth and seventh reasons of appeal may be considered together, as they relate to the refusal of the court to charge requests bearing upon the question of contributory negligence. The

substance of these three requests may be stated fairly and with sufficient accuracy for our present purpose as follows:

"The plaintiff must prove as a question of fact by some affirmative evidence that Ryan exercised due care. She must prove this by a fair preponderance of evidence. If there is no evidence which shows that he exercised such care the plaintiff has not made out her case. In the absence of any evidence upon this point the jury are not at liberty to guess or surmise that he exercised due care. Its existence may be inferred from the circumstances of the transaction, but if there is no evidence showing what these circumstances actually were the jury cannot assume its existence. The existence of due care on Ryan's part is not to be inferred from the fact, if it be found, that the town was guilty of negligence, nor from the mere fact, if it be true, that the accident was caused by the fault of the town in not furnishing a sufficient railing or from a defect in the highway; but the jury must have sufficient evidence besides that to show that he in fact used such care."

If we understand correctly the import of these requests, it seems to us, from a somewhat careful examination of the record, that the court in substance charged all that portion of them which contains a correct statement of the law. It charged in terms that the plaintiff must prove, as a question of fact, by a fair preponderance of evidence, that Ryan was in the exercise of due care. It charged in terms that in the absence of evidence bearing on this question, the jury were not at liberty to guess or surmise that he exercised due care. It charged in effect that if there was no evidence showing due care on Ryan's part the plaintiff had not made out her case. It charged that, in the absence of direct testimony from eyewitnesses, the existence of due care on Ryan's part might be inferred from the facts and circumstances in evidence, provided they fairly and reasonably warranted and supported such inference.

There were some parts of the requests, however, which the court did not charge in terms and perhaps not in substance and effect. It did not charge in terms that the plaint-

iff must prove that Ryan exercised due care by " some affirmative evidence." We are not quite sure that we understand the claim of the defendant upon this point. If it means that she must prove this by evidence other than what was already in the case, then, so far as the record shows, we think the court was justified in refusing to charge it in terms or in substance and effect. All the evidence then in the case is not before us. For aught that we can see some of it may have clearly tended to prove the existence of due care without the aid of any other evidence. The plaintiff claimed that there was such evidence, and that it did tend to prove due care, and the defendant claimed that it did not. We cannot say from the record that there was no such evidence, or say as matter of law that it did not tend to prove the existence of due care. If there was such evidence its weight and effect were for the jury. On the other hand, if this claim means, as we rather think it does, that the plaintiff must prove that Ryan exercised due care by evidence relevant upon that precise point and satisfactory to the jury, then in substance and effect the charge shows that the court complied with it. The court told the jury that the evidence —the facts and circumstances—must be of such a nature and so shown as to fairly and reasonably warrant and support them in finding that he exercised due care.

Again, as shown above, the defendant requested the court to charge that the existence of due care on Ryan's part is not to be inferred from the fact, even if true, that the town was guilty of negligence ; nor from the mere fact, if true, that the accident was caused by the fault of the town in not furnishing a sufficient railing or from a defect in the highway, but that the jury must have sufficient evidence besides the existence of these two facts to show that Ryan exercised due care.

The court did not comply with this request in terms, nor do we see how it could have done so. The request as made is ambiguous and misleading. Taken literally it seems to mean that, even if the jury find the two ultimate facts aforesaid, they must not from the existence of these facts alone

infer the other ultimate fact that Ryan exercised due care. There was apparently no necessity for so charging, if this is what the request means, because there was no claim in the case on the part of anyone that the inference of due care could be drawn from the mere existence of these other two ultimate facts as such. What the plaintiff did claim was that the facts and circumstances in evidence and relevant upon the other two ultimate facts, were also, some of them at least, relevant upon the question of contributory negligence. Taken in this literal way, we think the court did in substance comply with this request. It told the jury that they must find the existence of due care from the facts and circumstances in evidence; that these must be such as fairly and reasonably supported such a finding; and that it was not enough to find that the highway was defective, and that Ryan had fallen and been killed because of the defect, unless they further found, from evidence that warranted the finding, the existence of due care on his part.

If this request means, as perhaps it really does, that the facts and circumstances relevant upon the two ultimate facts aforesaid, and from which they might be established, were none of them also relevant upon the question of contributory negligence, and that the court should have so told the jury, then we think the court did not err in refusing to so charge either in terms or in substance. All the evidence is not before us on this appeal. We are unable to say from the record that, amongst the evidence offered to prove the two ultimate facts aforesaid, there was none that was relevant upon the question of contributory negligence. On the contrary, so far as the record does disclose what that evidence was, it discloses some at least which is relevant upon the question of contributory negligence. The evidence as to the character of the highway at the point in question, and the other matters referred to in the defendant's own request and according to its own claim, as set forth in its second reason of appeal and heretofore considered, are clearly of this nature. How then could the court tell the jury that there was no such evidence?

Again, this request may mean that, while there was relevant evidence upon both of said ultimate facts, some of which was also relevant upon the question of contributory negligence, the court should have pointed out to the jury which was which, and should then have told them that the inference as to contributory negligence could be drawn by them only from such evidence as was relevant upon that point.

If this is its meaning, the court did in fact comply with the last part of it, and did not err in not complying with the first part. It told the jury that the facts and circumstances from which they might infer the existence of due care must be such as would fairly and reasonably warrant the inference; and this was only saying to the jury, in a way they could understand, that the evidence must be relevant.

The first part in effect asked the court to separate the evidence relevant upon the question of contributory negligence from that which was not, and tell the jury which was so relevant and which was not. Such a thing was practically impossible and it was not incumbent upon the court to attempt it. The charge as given upon the point in question embodied in substance or in terms all that was legal in these requests; it was a correct statement of the law as adapted to the facts in the case; and it was fairly sufficient for the guidance of the jury. The duty of the court was thus fully performed. *City of Hartford* v. *Champion*, 58 Conn., 276. This disposes of these three assignments of error.

In the eighth and ninth reasons of appeal, which may for convenience be considered together, the defendant complains of the charge as given. The court in substance told the jury that, although there was no direct proof of the fact that Ryan fell from the bridge and was killed at the point where the railing was defective and by reason of that defect, these facts might be proved from other facts and circumstances established by the evidence; and that although there were no eye-witnesses as to the manner in which Ryan crossed the bridge, the way in which he did fall off, and how he acted, the fact that he exercised due care might be inferred from

circumstantial evidence. The jury were also told that these facts and circumstances must be established by a fair preponderance of testimony, and must be of such a nature as to fairly and reasonably lead to, warrant and support both conclusions.

As already stated the evidence in the case is not before us. If the circumstantial evidence in the case was relevant upon both of these points, and it was so relevant to some extent for aught that we can see, then the court instructed the jury correctly. The real grievance of which the defendant complains as it is set forth in the brief and was urged before us in the argument, is not perhaps clearly and distinctly stated in any one of the reasons of appeal, taken singly and by itself, but the defendant claims it arises out of their combined effect. That grievance in brief is this:—that there was no competent evidence before the jury upon the question of contributory negligence, and that the court ought to have so told the jury and in effect directed a verdict for the defendant on this point. By competent evidence here we understand the defendant to mean relevant evidence.

This claim proceeds on the assumption that there was no relevant evidence before the jury on the question of contributory negligence, and of course that this appears from the record. But the assumption is without foundation. The record does show, as we have seen, that there was some evidence before the jury relevant upon the question of contributory negligence; the evidence so shown we think made it the duty of the court to submit it to the jury for what it was worth on that point. And from the record we have no warrant for saying that there was no other relevant evidence on this point than what the record discloses. How then can we on this record say that the court erred in refusing to charge as claimed?

The truth is, the defendant seems to regard this appeal as if it were a motion for a new trial for a verdict against evidence, where, with all the evidence before us, we could say from the record that there was no relevant evidence upon the question of contributory negligence. It says in one part

of its brief that the court "tells the jury in so many words that they may find from the mere circumstances that Ryan was going towards the bridge on the south side-walk about twelve o'clock, and was not again seen until next morning in the bed of the river, that he was in the exercise of due care." All through the brief the claim is made that there was no evidence of any kind relevant upon the fact of contributory negligence except the mere fact that Ryan was last seen on this highway going towards the bridge, and this they claim was not relevant. It is quite a sufficient answer to these claims to say that they are without foundation, so far as we can see from the record.

Furthermore, certain parts of the evidence in this case which the defendant claims to be clearly irrelevant are quite similar to parts of the evidence which this court held not only to be relevant but sufficient to sustain a verdict in the case of *Bronson* v. *Town of Southbury*, 37 Conn., 199.

Most, if not all, of the cases cited on the defendant's brief and pressed upon our attention are cases where the evidence appears upon the record and the question of its relevancy or sufficiency is properly before the court. We have no occasion at present to review or to criticise them. It is enough for our present purpose to say that the questions discussed in those cases are not before us on this appeal. The court did not err in its charge, nor, so far as it refused to charge the requests made, in so refusing to charge.

The only remaining question to be considered is that arising upon the admission of certain evidence. During the trial the plaintiff offered witnesses who were familiar with the place in question. After describing the condition of the railing and the hole in the walk, and the bridge and its surroundings, they were asked the following question :—" With that rail down and that place in the condition you have described, I ask you whether or not the place was bad and dangerous ?" Objection to the form of the question was waived by the defendant, but it insisted that the witnesses should only be permitted to state the facts, to describe the place and not to

give their opinion. The court permitted the witnesses to answer the question and the defendant excepted.

The defendant in its brief says that " there is no indication that there were any latent defects requiring the giving an opinion as asked of the witnesses. * * * It was clearly within the power of the plaintiff to fully and clearly describe the situation." We cannot see from the record that this is so. On the contrary it is perhaps a legitimate inference from the record that the witnesses could not fully and clearly describe the situation to the jury. They had necessarily to describe the highway at this point; the hole in the side-walk, its size, appearance and location; its proximity to the broken railing; the condition and appearance of the broken railing; the bridge and its surroundings; and other matters of a similar nature. It would seem as if a separate and detailed statement of these matters would not put them as a connected whole before the jury precisely as they appeared to the witnesses. As all objections to the form and terms of the question were expressly waived, we must regard it as one calling for the opinion of the witnesses as to whether the matters described rendered the highway as this point reasonably safe or not. " The elements that enter into the question of reasonable safety are often numerous and difficult to describe; and for this reason it has long been the practice in this state to admit even the opinions of non-experts, founded on their own personal knowledge, and in connection with facts stated by them, upon questions " whether a road is or is not in repair, or whether a bridge is sound and safe, etc." *Taylor* v. *Town of Monroe*, 43 Conn., 45. The exception to the general rule in such cases is grounded on necessity. *Sydleman* v. *Beckwith*, 43 Conn., 12; *Graham* v. *Pennsylvania Co.*, 21 Atlantic Rep., 151. " The facts are sometimes incapable of being presented with their proper force and significancy to any but the observer himself. * * * Under these circumstances, the opinions of witnesses must of necessity be received." *Clifford* v. *Richardson*, 18 Vermont, 620.

Whatever the decisions may be elsewhere, we think that

the ruling of the court below upon this question was, under the circumstances, in accordance with the principles heretofore laid down by this court. *Dunham's Appeal from Probate*, 27 Conn., 197; *Clinton* v. *Howard*, 42 id., 294; *Sydleman* v. *Beckwith*, 43 id., 9; *Qninn* v. *N. York, N. Hav. & Hartford, R. R. Co.*, 56 id., 44.

There is no error apparent upon the record.

In this opinion the other judges concurred.